IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ROYAL DOMINGO FLAGG, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 18-00909-CV-W-ODS ) |
| PETERSON MANUFACTURING COMPANY, et al., | ) ) ) |
| Defendants. | ) ) |

## ORDER AND OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is Defendants' Motion for Summary Judgment. Doc. #31. For the following reasons, Defendants' motion is granted.

## I. BACKGROUND

Royal Domingo Flagg brings this employment retaliation lawsuit against Maxi-Seal Harness Systems, Inc. and Peterson Manufacturing Company. Maxi-Seal designs and manufactures custom harness systems for vehicles. Doc. #32-2, at 2. Peterson, which produces and markets vehicle safety lighting systems, is Maxi-Seal's parent company. Doc. #15; Doc. #32-1, at 2.

In February 2018, Plaintiff applied for a position with Maxi-Seal. Doc. #32-2, at 3; Doc. #32-4, at 15. After interviewing Plaintiff, Maxi-Seal's human resources manager, Erica Armacost, hired him. Doc. #32-2, at 2-3; Doc. #32-4, at 32, 35. Before beginning his employment, Plaintiff signed several Maxi-Seal documents, agreeing to not disclose confidential information and acknowledging he received and reviewed Maxi-Seal's policies. Doc. #32-2, at 3, 5-6,11-13, 26-35; Doc. #32-4, at 16-19, 25-27, 36-37.

On May 21, 2018, Plaintiff began working as an assembler. Doc. #32-2, at 3; Doc. #32-3, at 2. Plaintiff, like all new employees, was evaluated during the first three months of employment. Doc. #32-2, at 6, 35; Doc. #32-4, at 26-28. During the evaluation period, a new employee's supervisor continually evaluates the employee's

"performance and compatibility with Maxi-Seal."  *Id*.  Plaintiff understood if his "performance did not meet the standards set forth by Maxi-Seal," his employment would be terminated.  *Id*.

After each month during the evaluation period, a new employee's supervisor completes a performance evaluation.  Doc. #32-2, at 6.  On June 21, 2018, Plaintiff was evaluated by his immediate supervisor, Scott Knight, a Maxi-Seal employee.  Doc. #32-2, at 2, 4-6; Doc. #32-4, at 35.  Knight gave Plaintiff a "3" rating for quantity of work, which appears to indicate he was above expectations.[1]  Doc. #32-2, at 24.  Knight found Plaintiff met expectations (a "2" rating) in all other areas: quality of work, knowledge of job, relations with supervisor, cooperation with others, attendance and reliability, initiative and creativity, and capacity to develop.  *Id.*

On July 21, 2018, Knight again evaluated Plaintiff's performance.  *Id.* at 2-6, 24.  Plaintiff's ratings in all but two areas remained unchanged.  *Id.* at 24.  For knowledge of job and cooperation with others, Knight gave Plaintiff a "1" rating, meaning he was "below expectations."  *Id*.

During July 2018, Maxi-Seal received written complaints from three individuals about Plaintiff "degrad[ing] the lead and production supervisors, claiming they only do their jobs half-way"; "insult[ing]" the "character, integrity, and intelligence" of a trainer; being insubordinate and disrespectful; "boast[ing] he had paperwork in his portfolio that Scott Knight hasn[']t seen"; being condescending; telling a trainer "how and what" to do; saying "special needs, slow people" were sent to work on a certain piece of equipment; "[c]onstantly stat[ing] he was smarter than…the trainer…and smarter than most in the warehouse"; stating he has been assured by Maxi-Seal's vice president and human resources manager that he "cannot be fired"; and making comments about "fat women" and "that they stink."  Doc. #32-2, at 3-4, 15-17, 19-20, 22; Doc. #32-3, at 2-5, 9-11, 13-14, 16.  Maxi-Seal also received several verbal complaints from employees about Plaintiff's "unprofessional behavior and communication."  Doc. #32-3, at 2.

---

[1] Without explanation, this exhibit was partially redacted.  Doc. #32-2, at 24.  The explanation for a "3" rating was part of the redaction.  *Id*.  Still, a "3" rating appears to be the highest rating a new employee may receive on the performance evaluation.  *Id*.

Knight, who witnessed Plaintiff's "unprofessional and disruptive behavior and communication," recommended Plaintiff's employment be terminated. Doc. #32-2, at 2-3, 5; Doc. #32-3, at 5. "Based on the employee complaints about Plaintiff, Knight's observations about Plaintiff's performance, and Knight's recommendation," Jim Rush, a vice president of Maxi-Seal, decided to terminate Plaintiff's employment. Doc. #32-2, at 5; Doc. #32-3, at 2-5. On July 30, 2018, Plaintiff's employment was terminated. Doc. #32-2, at 2; Doc. #32-3, at 2, 5-6; Doc. #32-4, at 21.

In late 2018, Plaintiff filed this lawsuit against Maxi-Seal and Peterson. Plaintiff contends he was employed by Maxi-Seal and "under the Authority of" Peterson or the two companies are "one company." Doc. #5, ¶ 2; Doc. #32-4, at 42. He alleges Maxi-Seal and Peterson retaliated against him in violation of Title VII of the Civil Rights Act and section 287.780 of the Missouri Revised Statutes when his employment was terminated on July 30, 2018. Doc. #5, ¶¶ 1, 58-59; Doc. #32-4, at 20-22. Maxi-Seal and Peterson move for summary judgment on all of Plaintiff's claims.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). The Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986). "[A] nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted).

3

## III. DISCUSSION

### A. Summary Judgment Briefing

#### (1) Plaintiff's Response to Defendants' Facts

In support of their motion for summary judgment, Defendants set forth those facts they assert cannot be genuinely disputed. Doc. #32, at 7-21. In compliance with Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56.1, Defendants cited particular portions of the record and attached documents to support their facts. *Id.*; *see also* Doc. #32-1; Doc. #32-2; Doc. #32-3; Doc. #32-4.

Plaintiff, as the party opposing Defendants' motion for summary judgment, was supposed to begin his "opposing suggestions by admitting or controverting each separately numbered paragraph in the movant's statement of facts." L.R. 56.1(b)(1). If he opposed a particular fact, Plaintiff was required to "properly support [his] denial in accordance with Fed. R. Civ. P. 56(c)." *Id.* When an opposing party fails to specifically controvert a fact set forth by the movant, those facts "are deemed admitted for the purpose of summary judgment." *Id.*

When responding to Defendants' summary judgment motion, Plaintiff set forth a "Statement of Controverted Facts." Doc. #35, at 5-13. By referring to the facts as "controverted," it is unclear if Plaintiff intended to controvert Defendants' facts or if he was asserting additional facts he believed were uncontroverted. The Court addresses both possibilities.

If his "Statement of Controverted Facts" was intended to "controvert" Defendants' statement of facts, Plaintiff failed to comply with the Federal Rules of Civil Procedure and the Court's Local Rules. That is, he did not admit or controvert any of Defendants' numbered facts, and he failed to cite or refer to anything in the record to support most of his assertions. Fed. R. Civ. P. 56(c); L.R. 56.1(b)(1).

The Court is mindful that Plaintiff is pro se. But his pro se status does "not entitle him to disregard the Federal Rules of Civil Procedure" or excuse him from "compliance with relevant rules of the procedural and substantive law." *Bennett v. Dr Pepper/Seven Up, Inc.,* 295 F.3d 805, 808 (8th Cir. 2002) (stating a party's pro se status does "not entitle him to disregard the Federal Rules of Civil Procedure"); *Schooley v. Kennedy,* 712 F.2d 372, 373 (8th Cir. 1983) (citations omitted). Nevertheless, when

considering Defendants' summary judgment motion, the Court, as it must, viewed the facts and drew all inferences in the light most favorable to Plaintiff. *RSA 1 Ltd. P'ship v. Paramount Software Assocs., Inc.*, 793 F.3d 903, 906 (8th Cir. 2015).

### *(2)     Plaintiff's "Statement of Controverted Facts"*

If his "Statement of Controverted Facts" intended to set forth additional facts, Plaintiff failed to comply with the Federal Rules of Civil Procedure and the Local Rules. Apart from portions of six purported facts, Plaintiff did not cite or refer to anything in the record establishing his purported facts. Because he relied on facts not included in Defendants' motion, Plaintiff had to "add a concise listing of material facts" with citations "to particular parts of materials in the record" to support each asserted fact. Fed. R. Civ. P. 56(c); L.R. 56.1(b)(2). But Plaintiff failed to cite any evidence to support most of his purported facts. *See* Doc. #35, at 5-13.

Additionally, while seven exhibits were provided, most of Plaintiff's facts refer to documents that he did not provide, which also violates the Local Rules. Doc. #35, at 5-13; L.R. 56.1(d) (directing a party to "attach a copy of the relevant excerpt" of a document to which a fact refers).[2] This Court "is not required to speculate on which

---

[2] Apart from Exhibit 1, Plaintiff's exhibits are confusing. Exhibit 2 is described as an "email regarding mistreatment of Plaintiff," but it is actually an email regarding "Hyundai Shop orders by Date" with unidentified documents attached. Doc. #35, at 2; Doc. #35-1, at 4-28. There is nothing in the email or the attached documents regarding Plaintiff, and they are not relevant to his claims. Exhibits 3 and 7 appear to have been switched. Exhibit 3 is identified as an affidavit from Sarah Haugen; Exhibit 7 is described as an incentive program prepared by Plaintiff. Doc. #35, at 2. However, Exhibit 3 is the "Associate Incentive Program Manual"; Exhibit 7 is Haugen's declaration (misidentified as an affidavit). Doc. #35-1, at 29-43, 62-63. Exhibit 4 is identified as an email from Defendants encouraging the incentive program, but it is actually a letter dated June 2, 2010, from Plaintiff to the Bureau of Prisons regarding "Communication Management Units." Doc. #35, at 2; Doc. #35-1, at 43-50. Exhibit 5 are printouts from Wikipedia.com and an unidentified source regarding communication management units in the Bureau of Prisons. Doc. #35-1, at 57-61. Exhibits 4 and 5 are inadmissible hearsay, and even if they admissible, neither document is relevant to Plaintiff's claims. *See Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004) (citation omitted); Fed. R. Civ. P. 56(c)(1). Finally, contrary to Plaintiff's representation that his exhibits included emails from Defendants encouraging the incentive program and showing interference with his work assignment (Doc. #35, at 2), the Court was unable to locate either email in the sixty-three pages of exhibits he provided. *See* Doc. #35-1.

5

portion of the record" Plaintiff relies, "nor is it obligated to wade through and search the entire record for some specific facts" supporting Plaintiff's facts and arguments. *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (citation omitted). Nonetheless, as stated *supra*, the Court, when considering Defendants' motion, viewed the facts and drew all inferences in the light most favorable to Plaintiff.

### (3) *Plaintiff's Criminal History, Prior Litigation, and Subsequent Employment*

In their summary judgment motion, Defendants outlined Plaintiff's criminal history, prior lawsuits he filed, and his employment subsequent to Maxi-Seal. Doc. #32, at 8-9. Defendants seem to insinuate Plaintiff was not truthful on his job application or failed to disclose his criminal history. Doc. #32, at 9. When responding to Defendants' motion, Plaintiff addressed these facts, including the suggestion that he falsified his job application or failed to disclose his criminal record. Doc. #35, at 6-12. In their reply, Defendants maintain, "Plaintiff's drug and criminal history – aside from crimes regarding his credibility such as forgery – have no bearing on the issue presented…in Defendants' Motion for Summary Judgment…." Doc. #38, at 8. But Defendants ignore precedent and the Court's duties and responsibilities when considering a motion for summary judgment. That is, this Court cannot make credibility determinations when ruling a motion for summary judgment. *Anderson*, 477 U.S. at 255.

Plaintiff's employment was not terminated because he falsified his application or failed to disclose his criminal record to Maxi-Seal, and as explained above, the Court is not permitted to make credibility determinations. Thus, Plaintiff's criminal record is not relevant to his claims. Likewise, neither party suggests (and the Court is unable to discern) the relevance of Plaintiff's prior lawsuits and subsequent employment with regard to the summary judgment motion. Notably, although they proffered facts about Plaintiff's prior lawsuits, Defendants, in their reply, contend at least one of the lawsuits has "no bearing on the issues presented to the Court." Doc. #38, at 13. For the foregoing reasons, the Court did not consider facts related to Plaintiff's criminal history, prior litigation, and subsequent employment when deciding Defendants' summary judgment motion.

### B. Plaintiff's Alleged Employment with Peterson

Before addressing the substance of Plaintiff's claims, the Court must first consider whether Maxi-Seal <u>and</u> Peterson employed Plaintiff. The parties concede Maxi-Seal employed Plaintiff. But the parties disagree about whether there was an employer-employee relationship between Peterson and Plaintiff under Title VII or the Missouri's Workers' Compensation Law ("MWCL").

#### *(1) Employer-Employee Relationship Under the MWCL*

Under the MWCL, an employer includes, but is not limited to, a corporation that "us[es] the service of another for pay." Mo. Rev. Stat. § 287.030.1(1). To establish an employer-employee relationship between Peterson and Plaintiff, Plaintiff must show he "worked in the service of" Peterson, and Peterson "controlled the services." *Chouteau v. Netco Constr.*, 132 S.W.3d 328, 332 (Mo. Ct. App. 2004) (citation omitted). "The pivotal question in determining the existence of an employer-employee relationship is whether the employer had the right to control the means and manner of the service…." *Id.* (citation omitted).

Here, the undisputed facts establish Peterson had no actual control or right to control Plaintiff's work performance. Also, there is no evidence that Plaintiff worked "in the service of" Peterson. When viewing the evidence in the light most favorable to Plaintiff, the Court finds there was no employer-employee relationship between Plaintiff and Peterson.[3] Without an employer-employee relationship, Plaintiff cannot bring a worker's compensation retaliation claim against Peterson, and Peterson cannot be liable for Plaintiff's retaliation claim under the MWCL. Therefore, the Court grants Peterson's motion for summary judgment on Plaintiff's worker's compensation retaliation claim.

---

[3] Because there is no evidence of a contract between Plaintiff and Peterson or Plaintiff being injured on Peterson's premises, Plaintiff could not be considered a statutory employee. *See Bass v. Nat'l Super Mkts., Inc.*, 911 S.W.2d 617, 619-20 (Mo. banc 1995) (citation omitted). Thus, the Court does not address this possible basis of an employer-employee relationship.

### *(2)* *Integrated Enterprise and Joint Employer Under Title VII*

Under Title VII, two separate entities that form an "integrated enterprise" can be considered "a single employer for purposes of both coverage and liability." *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 793 (8th Cir. 2009) (citation omitted); *Jarred v. Walters Indus. Elecs., Inc.*, 153 F. Supp. 2d 1095, 1098 (W.D. Mo. 2001). In addition, two separate entities that "have chosen to handle certain aspects of their employer-employee relationships jointly" can be considered a "joint employer," and thus, both can be held liable under Title VII. *Jarred*, 153 F. Supp. 2d at 1098-99 (citation omitted). To determine whether entities are an "integrated enterprise" or "joint employers," the Court considers the same factors: (1) the degree of interrelation between Peterson and Maxi-Seal, (2) the degree to which Peterson and Maxi-Seal share common management, (3) whether there is centralized control of labor relations, and (4) the degree of common ownership or financial control. *Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014) (citing *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391-92 (8th Cir. 1977)); *Pulitzer Publ'g Co. v. N.L.R.B.*, 618 F.2d 1275, 1278-79 (8th Cir. 1980)) (citations omitted); *Sandoval*, 578 F.3d at 792-93 (citation omitted); *Walton v. Edge Med. Prof'l Servs., LLC*, 442 F. Supp. 2d 731, 748-49 (W.D. Mo. 2006); *Scheidecker v. Arvig Enters., Inc.*, 122 F. Supp. 2d 1031, 1037-38 (D. Minn. 2000) (citations omitted).

It is undisputed that Peterson is the parent company of Maxi-Seal. But there is no evidence establishing whether two entities share common management. Likewise, there is no evidence of common ownership or financial control. While Plaintiff contends he was informed of his discharge by a Peterson's human resources manager, there is nothing in the record establishing Maxi-Seal and Peterson shared centralized control of labor relations.

What the record establishes is Plaintiff received paychecks from Maxi-Seal, he was only supervised by Maxi-Seal employees, he only performed work at Maxi-Seal's facility, and he did not perform work at Peterson's facility. Doc. #32-4, at 34-36; *see also* Doc. #32-2, at 2. Plaintiff admitted he signed Maxi-Seal's non-disclosure agreement and received Maxi-Seal's policies. Doc. #32-2, at 3, 5-6, 11-13, 26-35; Doc. #32-4, at 16-19, 25-27, 36-37. There is nothing in the record demonstrating Plaintiff signed a similar agreement with Peterson and/or received Peterson's policies. It is

undisputed that Peterson did not exercise control over the manner in which Plaintiff performed his work, and Peterson did not provide input into Maxi-Seal's decision to terminate Plaintiff's employment. Doc. #32-1, at 2; Doc. #32-2, at 2, 5.

When viewing the evidence in the light most favorable to Plaintiff, the record does not demonstrate Maxi-Seal and Peterson are an integrated enterprise, and they did not jointly employ Plaintiff. Thus, the Court grants Peterson's motion for summary judgment on all Plaintiff's Title VII claims. Although the Court grants summary judgment in favor of Peterson on all of Plaintiff's claims due to the lack of an employer-employee relationship, the Court also addresses Peterson's arguments that Plaintiff fails to establish a prima facie case of retaliation under Title VII and the MWCL against Peterson. *See infra*, section III(B)(2).

### C. Plaintiff's Claims
#### (1) *Title VII Retaliation*[4]

To establish a retaliatory discharge claim under Title VII, Plaintiff must show (1) he engaged in a statutorily protected activity, (2) his employment was terminated, and (3) the termination of his employment was causally linked to his protected activity. *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019) (citations omitted); *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1069 (8th Cir. 2017) (citation omitted). It is undisputed that Plaintiff's employment was terminated. However, Defendants argue they are entitled to summary judgment because, at minimum, Plaintiff did not engage in a statutorily protected activity.

An employee engages in a statutorily protected activity when he opposes an "unlawful employment practice" as defined by Title VII or opposes what the employee objectively, reasonably, and in good faith believes to be an unlawful employment

---

[4] Although not raised by Defendants, the Court notes Plaintiff's charge of discrimination did not list Peterson as his employer. Doc. #1-2, at 1. Before bringing a Title VII claim, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). If Plaintiff did not exhaust his administrative remedies as to his Title VII claim against Peterson, that would be an additional ground for the Court to dismiss this claim.

practice, even if the employment practice is not unlawful. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011) (citations omitted); *Bonn v. City of Omaha*, 623 F.3d 587, 591 (8th Cir. 2010). During his deposition, Plaintiff admitted he never complained to Maxi-Seal or Peterson (assuming Peterson could be considered his employer) about discrimination or harassment. Doc. #32-4, at 53. Further, neither Maxi-Seal nor Peterson received a complaint from Plaintiff about discrimination or harassment. Doc. #32-1, at 2; Doc. #32-2, at 8; Doc. #32-3, at 6.

Plaintiff argues he complained to Maxi-Seal about "mistreatment," but, during his deposition, he testified that his complaints to Maxi-Seal only pertained to the incentive program he was creating for Maxi-Seal and management's perception of his relationship with Armacost. Doc. #32-4, at 53. Plaintiff cites nothing in the record establishing he engaged in a statutorily protected activity. When viewing the evidence in the light most favorable to Plaintiff, as the Court must do, there is no evidence that Plaintiff engaged in a statutorily protected activity before his employment was terminated. In addition, because he did not engage in a statutorily protected activity, Plaintiff cannot show a causal connection between his non-existent statutorily protected activity and the termination of his employment. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's Title VII retaliation claim.

### (2)  *Worker's Compensation Retaliation*

To establish a worker's compensation retaliation claim, Plaintiff must show (1) he was an employee of Maxi-Seal (or Peterson, assuming it could be considered his employer), (2) he exercised a right granted by the MWCL, (3) he was discharged from his employment, and (4) his exercise of a right granted by the MWCL was a "motivating factor" in the decision to discharge him. Mo. Rev. Stat. § 287.780 (2017); *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 373 (Mo. banc 2014), *as modified* (May 27, 2014). The parties agree Plaintiff was an employee of Maxi-Seal, and his employment was terminated. But Defendants argue they are entitled to summary judgment because, at a minimum, Plaintiff did not exercise a right granted by the MWCL.

Filing a claim for worker's compensation benefits is one of the ways an employee exercises rights under the MWCL. *Hall v. Nutro Co.*, No. 17-CV-326-ODS, 2018 WL

3190763, at *6 (W.D. Mo. June 28, 2018) (citations omitted). But Plaintiff never filed a worker's compensation claim with Peterson or Maxi-Seal. Doc. #32-1, at 2; Doc. #32-2, at 8; Doc. #32-3, at 6. An employee also exercises a right under the MWCL when he avails himself of medical benefits under the MWCL and receives medical treatment and remains off work until released to return. *Hall*, 2018 WL 3190763, at *6 (citing *Hansome v. Nw. Cooperage Co.*, 679 S.W.2d 273, 275-76 (Mo. banc. 1984), *overruled on other grounds by Templemire*, 433 S.W.3d at 373, 378-80, and *Demi v. Sheehan Pipeline Constr.*, 452 S.W.3d 211, 216-17 (Mo. Ct. App. 2014) (collecting cases)). Plaintiff admitted he never suffered a workplace injury. Doc. #32-4, at 55. Thus, he could not have availed himself of medical treatment or medical benefits under the MWCL.

Finally, Plaintiff does not argue – much less, cite anything in the record showing – he exercised a right under the MCWL. The Court finds Plaintiff did not exercise a right under the MWCL. Further, because he did not exercise a right under the MWCL, Plaintiff cannot show a causal connection between the non-existent exercise of a right under the MWCL and his employment being terminated. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's worker's compensation retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the Courts grants Defendants' motion for summary judgment on all of Plaintiff's claims.

IT IS SO ORDERED.

DATE: January 15, 2020

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

11